2005 VT 106

## State of Vermont v. Adam Rheaume

[889 A.2d 711]

No. 04-166

Present: Reiber, C.J., Dooley, Johnson, Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed August 26, 2005

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Henry Hinton*, Appellate Defender, and *Dawn Matthews*, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Adam Rheaume entered a conditional plea of guilty to the charge of driving under the influence of intoxicating liquor (first offense) in violation of 23 V.S.A. § 1201. Pursuant to the conditional plea, defendant preserved the right to appeal solely on the issue of whether a law enforcement officer's warrantless entry into the treatment area in a hospital emergency room violated defendant's rights under Chapter I, Article 11 of the Vermont Constitution. We hold that defendant did not have a reasonable expectation of privacy in

the hospital's emergency room treatment area. Accordingly, we affirm the ruling of the trial court.

¶ 2. On May 19, 2002, defendant was involved in a single-car accident in the Town of Highgate and was transported to the Northwest Medical Center in St. Albans for treatment of his injuries. Rescue personnel at the scene of the accident informed State Trooper Jeffrey Smith that defendant was likely intoxicated. Trooper Smith then proceeded to the nurses' station in the hospital's emergency department, where he asked for permission to see defendant. The hospital's official written policy considers law enforcement officers to be "authorized personnel" who are permitted access into the emergency room as long as their presence does not interfere with ongoing treatment of a patient. In addition to doctors, nurses, and patients, clerical staff, housekeeping staff, facilities staff, family, and other agencies may also be present in the emergency room area.

¶ 3. The nurse on duty directed Trooper Smith to the "trauma room," which is located within the emergency room roughly fifteen to twenty feet from the nurses' station and consists of two patient beds that can be separated by a curtain. The door to the trauma room was open, and Trooper Smith entered without asking defendant's permission. Defendant was lying on a gurney. Trooper Smith observed cuts to defendant's lip and tongue, as well as gauze wrapped around his bleeding hands.

¶ 4. After informing defendant of his *Miranda* rights, Trooper Smith asked defendant if he would be willing to discuss the accident. Defendant refused to speak with the officer because he was in too much pain. Trooper Smith then advised defendant of his rights under the implied consent law and asked defendant to provide a blood sample. Defendant refused, and Trooper Smith then cited defendant for DUI. At some point before defendant was removed from the trauma room for X-rays, he yelled out that he knew the officer was there to give him a DUI and that he would not have been drinking and driving were it not for a fight at a party he attended before the accident. Defendant was not responding to any question by the officer when he made that exclamation.

¶ 5. Defendant moved to suppress his emergency room statements and to exclude his refusal to submit to a blood test, asserting violations of both Article 11 of the Vermont Constitution and the Fourth Amendment of the United States Constitution. The court denied the motion. Defendant entered into a plea agreement that preserved his right to appeal on constitutional privacy grounds, with the stipulation

that he would be permitted to withdraw his plea if the Supreme Court reversed on appeal. Defendant then filed this appeal.

¶ 6. On appeal from a denial of a motion to suppress, this Court applies a deferential standard of review to the trial court's findings of fact. *State v. Lawrence*, 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 (mem.). If the findings of fact are not clearly erroneous, we then review the legal issues de novo. *Id.* ¶¶ 8-9. Under the clearly erroneous standard, we will "uphold the court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them." *Mann v. Levin*, 2004 VT 100, ¶ 17, 177 Vt. 261, 861 A.2d 1138. Because the trial court's findings are supported by the evidence, we proceed to the legal issues.

¶ 7. As a preliminary matter, we note that on appeal defendant asserts only a violation of his right to privacy under Article 11 of the Vermont Constitution. He does not raise an argument under the Fourth Amendment to the United States Constitution.

¶ 8. Like the Fourth Amendment, Article 11 protects the "right to be free from unreasonable government intrusions into legitimate expectations of privacy." *State v. Welch*, 160 Vt. 70, 76, 624 A.2d 1105, 1108 (1992); accord *State v. Kirchoff*, 156 Vt. 1, 6, 587 A.2d 988, 992 (1991).\* Under Article 11, the question of whether an individual has a legitimate expectation of privacy "hinges on the essence of underlying constitutional values — including respect for *both* private, subjective expectations and public norms." *State v. Blow*, 157 Vt. 513, 517-18, 602 A.2d 552, 555 (1991). Accordingly, Article 11 requires "'first that a person ha[s] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recog-

---

\* While both provisions protect this same "core value," *Kirchoff*, 156 Vt. at 6, 587 A.2d at 992, "our Article 11 jurisprudence has diverged from the United States Supreme Court's analysis of the Fourth Amendment," *Welch*, 160 Vt. at 76, 624 A.2d at 1108. Specifically, we have recognized that Article 11 affords individuals greater privacy rights than its federal counterpart in certain circumstances. See, e.g., *State v. Geraw*, 173 Vt. 350, 353 n.2, 357-58, 795 A.2d 1219, 1222 n.2, 1225 (2002) (holding that police may not secretly record conversation in suspect's home without a warrant); *State v. Savva*, 159 Vt. 75, 79, 87-88, 616 A.2d 774, 776, 780-81 (1991) (recognizing higher privacy expectation under Article 11 in contents of closed containers in automobile's interior than in objects inside automobile in plain view); *Kirchoff*, 156 Vt. at 10, 587 A.2d at 994 (extending privacy rights in "open fields" beyond scope of federal protection). Thus, we note that the outcome of this case would not change even if defendant had raised a Fourth Amendment argument in this appeal.

nize as "reasonable."'" *Id.* at 517, 602 A.2d at 555 (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). In other words, in order to invoke Article 11's protection, a defendant must have "conveyed an expectation of privacy in such a way that a reasonable person would conclude that he sought to exclude the public." *Id.*; accord *State v. Hayes*, 170 Vt. 618, 619, 752 A.2d 16, 18 (2000) (mem.); *Kirchoff*, 156 Vt. at 10, 587 A.2d at 994. "Whether the steps taken are adequate for this purpose will depend on the specific facts of each case." *Kirchoff*, 156 Vt. at 10, 587 A.2d at 994.

¶ 9. Here, defendant has not demonstrated that he had a subjective expectation that no law enforcement officer would enter the emergency room without his consent. When Trooper Smith arrived at the emergency department, the door to defendant's trauma room was open. Once the officer entered the trauma room, defendant did not ask him to leave or suggest the room was private or inaccessible in any way. Defendant did not attempt to leave or limit contact with the officer. Moreover, defendant made the incriminating statements voluntarily — indeed, he blurted them out without having been questioned by the officer. There is no evidence that defendant manifested any subjective expectation of privacy in the treatment room.

¶ 10. Nor has defendant demonstrated that society recognizes an objective, reasonable expectation of privacy in the emergency treatment area of a hospital, which, "by its very nature, functions as a freely accessible area over which a patient has no control and where his privacy is diminished." *State v. Stott*, 794 A.2d 120, 127 (N.J. 2002). We have consistently held that a person cannot rely on constitutional search and seizure provisions "to protect areas or activities that have been willingly exposed to the public." *Geraw*, 173 Vt. at 352, 795 A.2d at 1221. While it is true that the public at large may not freely access the emergency area, medical personnel, hospital staff, patients and their families, and emergency workers — including police officers — are, as a matter of course, frequently, and not unexpectedly, moving through the area. Unlike a private hotel room, *United States v. Jeffers*, 342 U.S. 48, 51-52 (1951), a private business office, *O'Connor v. Ortega*, 480 U.S. 709, 718-19 (1987), or a private hospital room, *Morris v. Commonwealth*, 157 S.E.2d 191, 194 (Va. 1967), an emergency treatment area, or a "trauma room" located therein, is, for purposes of constitutional privacy protections, "public" and can afford no reasonable expectation of privacy. See, e.g., *Matthews v. Commonwealth*, 517 S.E.2d 263, 264 (Va. Ct. App. 1999) (holding that defendant had no reasonable expectation of privacy in a treatment room within the emergency

ward); accord *Buchanan v. State*, 432 So. 2d 147, 148 (Fla. Dist. Ct. App. 1983); *People v. Torres*, 494 N.E.2d 752, 755 (Ill. App. Ct. 1986); *State v. Thompson*, 585 N.W.2d 905, 911 (Wis. Ct. App. 1998). Against this background, a patient undergoing treatment for only a brief period of time cannot reasonably expect either to restrict access to the area, or to control whether other patients, their families, or the other categories of personnel mentioned above are present in the area. Therefore, defendant did not enjoy an objective, reasonable expectation of privacy in the emergency ward treatment room, where "conversations are subject to the eyes and ears of passersby." *State v. Brooks*, 157 Vt. 490, 493, 601 A.2d 963, 964 (1991).

¶ 11. Defendant argues that Article 11 should provide occupants of an emergency room treatment area a privacy interest commensurate with that afforded individuals in their homes. We have recognized that the home "represents a unique historical category with 'special expectations of privacy' warranting the strongest constitutional protection from warrantless searches and seizures." *Geraw*, 173 Vt. at 354, 795 A.2d at 1222 (quoting *State v. Morris*, 165 Vt. 111, 133, 680 A.2d 90, 105 (1996) (Dooley, J., dissenting)). In light of the above analysis, we see no reason why defendant's privacy expectations in these circumstances should be coextensive with those enjoyed in the home. Accordingly, the trial court correctly denied defendant's motion to suppress.

*Affirmed.*